IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DEBRA S. GOLDBECK, | ) | |
| | ) | |
| Plaintiff, | ) | CV-04-6228-ST |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| JO ANNE B. BARNHART, | ) | |
| | ) | |
| Defendant. | ) | |

STEWART, Magistrate Judge:

## **INTRODUCTION**

Pursuant to 42 USC §§ 405(g) and 1383(c)(3) (incorporating § 405(g)), plaintiff, Debra Goldbeck ("Goldbeck"), seeks judicial review of a final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under Title II and Title XVI of the Social Security Act. As discussed below, the Commissioner's decision should be affirmed.

///

1 - FINDINGS AND RECOMMENDATION

**BACKGROUND**

Goldbeck was born on February 28, 1957, and is a high school graduate. Tr. 288.[1]  She has worked as the supervisor in a craft store, a manicurist/nail technician, a sales clerk, and an office clerk. Tr. 300.  She last worked in February 2002. Tr. 288.

Goldbeck applied for DIB and SSI on March 1 and 2, 2002.  Tr. 49-51, 274-275.  She alleged disability from rheumatoid arthritis as of February 14, 2002.  Tr. 49, 61, 274.  After her applications were denied initially and upon reconsideration, she requested a hearing.  Tr. 34-45, 276-283.  A hearing was held before an administrative law judge ("ALJ") on February 25, 2004.  Tr. 285.  The ALJ denied her claim for benefits on May 22, 2004.  Tr. 11-22.  Goldbeck requested review of the ALJ's decision, which the Appeals Council denied on May 17, 2004.  Tr. 6-10.  Accordingly, the ALJ's decision became the final decision of the Commissioner.

**DISABILITY ANALYSIS**

The initial burden of proof rests upon the claimant to establish disability.  *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 USC § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 US 137, 140 (1987); 20 CFR §§ 404.1520, 416.920.

---

[1] Citations are to the page number of the transcript of the record filed with the Commissioner's Answer.

At step one, the ALJ found that Goldbeck had not engaged in substantial gainful activity since February 14, 2002. Tr. 21 (Finding #2); 20 CFR §§ 404.1520(b), 416.920(b).

At step two, the ALJ found that Goldbeck had the following severe impairments: multiple arthralgias without clear etiology and with possible underlying fibromyalgia and rheumatoid arthritis, as well as a complex of psychological disorders (dysthymia, post traumatic stress disorder ("PTSD"), anxiety, social phobia, sleep disorder, dependant personality disorder, and a pain disorder with both psychological and medical aspects). Tr. 21 (Finding #3); 20 CFR §§ 404.1520(c), 416.920(c).

If the adjudication proceeds to step three, the Commissioner must assess the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 CFR §§ 404.1520(e), 404.1545; 20 CFR §§ 416.920(a)(4)(iii), 416.920(d); Social Security Ruling ("SSR") 96-8p. Here the ALJ found that Goldbeck's impairments did not meet or equal the requirements of a listed impairment. Tr. 21 (Finding #4). The ALJ determined that Goldbeck retained an RFC which limited her to lifting and carrying no more than 10 pounds; standing and walking no more than two hours in an eight hour period; occasional climbing, balancing, stooping, kneeling, crouching, and crawling; needing an occasional opportunity to change position; and performing no rapid machine paced work. Tr. 21 (Finding #6).

At step four the Commissioner will find the claimant not disabled if he or she retains the RFC to perform work he or she has done in the past. 20 CFR §§ 404.1520(e), 416.920(a)(4)(iv)

& (f). Here the ALJ found that Goldbeck was no longer able to perform any of her past work. Tr. 21 (Finding #7).

If the adjudication reaches step five, the Commissioner must determine whether the claimant can perform other work that exists in the national economy. *Yuckert*, 482 US at 141-42; 20 CFR §§ 404.1520(f), 416.920(f). The burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Yuckert*, 482 US at 141-42; *Tackett v. Apfel*, 180 F3d 1094, 1099 (9th Cir 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR §§ 404.1566, 416.966. Relying upon testimony of the vocational expert, the ALJ found that Goldbeck could perform a significant number of jobs existing in the national economy, specifically office clerk, appointment clerk, and stationary cashier. Tr. 22 (Finding #11). Based on an alternative, more conservative RFC based on lifting only five pounds maximum, three pounds frequently, a five-hour sitting limitation and a four- hour standing/walking limitation, the ALJ concluded that Goldbeck could perform these same jobs. Tr. 20.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The

Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F3d at 1039-40. If substantial evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).

## DISCUSSION

Goldbeck contends that the ALJ made three errors: (1) failing to giving clear and convincing reasons for rejecting her testimony; (2) rejecting the opinion of Dr. Hudson, the treating rheumatologist; and (3) failing to meet the burden of proof that Goldbeck retains the ability to perform "other work" in the national economy. The court will address each of these contentions in turn.

### I. Rejecting Goldbeck's Testimony

The ALJ found that Goldbeck was "not entirely credible." Tr. 18. Once a claimant establishes the existence of an impairment and a causal relationship between the impairment and some level of symptoms, the ALJ must provide clear and convincing reasons for rejecting a claimant's subjective claims. *Morgan v. Comm'r of Social Sec. Admin.*, 169 F3d 595, 599 (9th Cir 1999). If an ALJ finds that a claimant's testimony relating to the intensity of pain and other limitations is unreliable, then the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. *See Bunnell v. Sullivan*, 947 F2d 341, 345-46 (9th Cir 1991). Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. *Yuckert v. Bowen*, 841 F2d 303, 307 (9th Cir 1988); *Sample v. Schweiker*, 694 F2d 639, 642 (9th Cir 1982).

5 - FINDINGS AND RECOMMENDATION

The ALJ rejected Goldbeck's testimony because of several inconsistencies. Tr. 18. The ALJ first noted an inconsistency in the way Goldbeck behaved during vocational rehabilitation, initially requesting computer training, then announcing she lacked the "courage" to follow through. The ALJ stated that this lack of compliance "was not a matter of courage but of will." *Id.* Although Goldbeck reported sitting around the house most of the time, she also admitted frequently going the library to check out books. Dr. Sharon Beickel, the psychologist who performed an evaluation on September 19, 2003, noted that Goldbeck did not display pain behavior, despite her complaint of chronic pain, and that her gait was within normal limits. Goldbeck also blamed her difficulty maintaining body weight on medications, but when closely questioned, "begrudgingly admitted" to an eating disorder. *Id.* More generally, the ALJ observed that the good scores that Goldbeck received during vocational training were inconsistent with her subjective representations of inability to work, particularly the "stamina assessment" which demonstrated that Goldbeck had the capability to work an eight-hour shift. Based on these inconsistencies, the ALJ rejected Golbeck's assertion that her pain prevented her from working an eight-hour shift.

Some of these inconsistencies are not particularly convincing. Lacking the courage to follow through on computer training may not be a matter of will, but could just as well be attributable to her dependent personality disorder, as diagnosed by Dr. Beickel. Tr. 204-05. Going to the library to check out books is not necessarily inconsistent with staying around the house most of the time. And blaming medication for inconsistent weight could be characteristic of an eating disorder, specifically anorexia nervosa in which one has a distorted view of one's body. *See* Diagnostic and Statistical Manual of Mental Disorders, 4th Ed, pp. 541-42.

However, the other inconsistencies are fully supported by the evidence in the record and undermine Goldbeck's credibility. Dr. Beickel noted that Goldbeck did not display pain behavior and that her gait was normal. Tr. 202. In addition, the record reflects, as noted by the ALJ, that despite her pain, Goldbeck is "able to shop for food and prepare meals, handle money and use the telephone," as well as care for three cats. Tr. 17, 204. More importantly, Goldbeck received high marks during her February 5, 2004 vocational assessment and training (Tr. 127-31), including the "stamina assessment" (Tr. 130). Although Goldbeck complained of pain and discomfort, requiring her "to be able to change tasks if required to type longer than 30 minutes at [a] time" (Tr. 131), she nevertheless "demonstrated that she is able to work entire 4- to 8 [hour] shift." Tr. 130. This finding directly contradicts Goldbeck's own characterization of her inability to work and strongly supports the ALJ's credibility determination.

In sum, the record reveals that the ALJ was conscientious in his assessment of Goldbeck's credibility and set forth clear and convincing reasons for rejecting her testimony.

## II. **Rejecting the Opinion of Dr. Hudson**

Goldbeck claims that the ALJ erred by rejecting the opinion of her treating rheumatologist, Dr. Hudson, who wrote the following short letter dated January 18, 2004:

> The above named patient has been under my care for approximately five years. She has a painful, chronic disorder with characteristics of rheumatoid arthritis and is unable to function at any type of job on a regular basis.

Tr. 240.

The ALJ properly rejected this opinion because a claimant's ability to work is not a proper medical source opinion. Disability has both a medical and vocational component. *See* 20

CFR §§ 404.1560, 416.960.  Because a medical source does not have the expertise to comment on the vocational component of disability, a statement by a medical source that a person is unable to work is not accorded much weight.  *See* 20 CFR §§ 404.1527(e), 416.927(e).

The ALJ must consider medical opinions about a claimant's condition and functional limitations, along with all other evidence in the record, to determine whether a claimant is disabled under the Social Security Act.  SSR 96-5p.  The purpose of medical testimony is to provide facts detailing the condition of the claimant; the question whether the claimant's condition satisfies the criteria for disability under social security regulation is not a medical issue, but an administrative one that is reserved within the discretion of the Commissioner.  *Id.*

Yet, as noted by the ALJ, because Dr. Hudson served as Goldbeck's treating physician, his opinion requires additional consideration.  A treating source physician's opinion is given controlling weight where supported by medically accepted clinical evidence and other substantial evidence in the record.  20 CFR §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2P.  The ALJ declined to give controlling weight to Dr. Hudson's opinion "as he maintains a position which is not consistent with other substantial evidence in the record in regards to [Goldbeck's] ability to perform work related activity."  Tr. 19.

The record reveals that Dr. Hudson's opinion regarding the severity of Goldbeck's pain is based primarily upon the subjective input of Goldbeck.  Because the ALJ properly concluded that Goldbeck is "not entirely credible," Dr. Hudson's opinion is unsupported by substantial evidence. *See Fair v. Bowen*, 885 F2d 597, 605 (9th Cir 1989), citing *Brawner v. Secretary of Health & Human Servs.*, 839 F2d 432, 433-34 (9th Cir 1988) (a physician's opinion of disability

"premised to a large extent upon the claimant's own accounts of his symptoms and limitations" may be disregarded where those complaints have been "properly discounted.").

Furthermore, the ALJ noted evidence that was inconsistent with Dr. Hudson's opinion, including the results of the vocational assessment concluding that Goldbeck "is able to work entire 4- to 8 [hour] shift, alternating sitting and standing" (Tr. 130); Dr. Hudson's recent opinion that the pain associated with Goldbeck's rheumatoid condition appeared to be improving with new medication (Ridaura) (Tr. 226-229); and Dr. Beickel's opinion that compound underlying physiological impairments created a possibility of exaggeration (Tr. 203).

In sum, the ALJ properly rejected Dr. Hudson's opinion because Goldbeck's subjective reports were properly discredited and the record contains other contradictory evidence.

### III.   Proof that Goldbeck Can Perform Other Work in the National Economy.

Because the ALJ found that Goldbeck could no longer perform her past work, the burden shifted to the Commissioner to prove that Goldbeck could perform other jobs existing in significant numbers in the national economy. Based on his evaluation of Goldbeck's RFC and the testimony of the vocational expert ("VE"), the ALJ concluded that Goldbeck could perform sedentary jobs as an office clerk, appointment clerk, and stationary cashier. Goldbeck contends that had the ALJ included other restrictions in the RFC, she would meet the criteria for disability.

First, Goldbeck states that the ALJ erred by not including the requirement that she be allowed to lay down for two hours during the work day. This requirement standing alone would establish disability. Yet the requirement was based entirely on the subjective testimony of Goldbeck herself. Because the ALJ properly rejected this testimony, omission of this from the ALJ's analysis is not error.

9 - FINDINGS AND RECOMMENDATION

Next, Goldbeck contends that the ALJ erred by failing to include requirements based on input from Dr. Beickel. Dr. Beickel commented that Goldbeck "would work best in a setting in which there is benign supervision, low social demand, and she could work at her own pace." Tr. 205. The ALJ accepted Dr. Beickel's limitation precluding rapid machine paced work, but declined to include restrictions based on benign supervision and low social demand. This was not error because Dr. Beickel did not opine that Goldbeck required these restrictions, only that such restrictions would be optimal. While Dr. Beickel's comments may have contained some ambiguity, the ALJ is responsible for resolving ambiguities and has the discretion to do so. *Magallanes v. Bowen*, 881 F2d 747, 750 (9th Cir 1989).

In sum, the court finds that the Commissioner met the burden for proving that Goldbeck could perform other work and did not err in rejecting the additional restrictions suggested by Goldbeck.

## **RECOMMENDATION**

For the reasons stated above, the Commissioner's decision should be affirmed.

////

////

////

////

////

////

////

**SCHEDULING ORDER**

Objections to the Findings and Recommendation, if any, are due **June 24, 2005.** If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

DATED this 6th day of June, 2005.

/s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge